

# EXHIBIT X

Forensic Billing Audit

## WM Law Billing Forensic Audit

## Victory Cleaning Systems, Inc., Case No. 24-40010-can11

### Cross-Referenced Against Case Docket and Source PDFs, February 14, 2026 (updated April 7, 2026)

**Companion to:** `WM_LAW_MATH_ERROR_AUDIT.md` (line-item arithmetic verification)

**Scope:** This audit goes beyond arithmetic. It cross-references billing entries against the actual case docket, examines whether billed work was ever completed or delivered, identifies competence failures that generated billable hours, and documents pattern evidence of billing irregularities.

**Source Documents:** 1. `RAB RAB Vitory Systems PREFILING Fees bill 2024-1-10.pdf` (Bill #1, Jan 10, 2024) 2. `RAB RAB Victory Systems POSTFILING Fees bill 2024-2-29.pdf` (Bill #2, Mar 4, 2024) 3. `RAB RAB Victory Systems POSTFILING Fees bill 2024-3-31.pdf` (Bill #3, Jun 3, 2024) 4. `RAB RAB Victory Systems POSTFILING Fees bill 2025-12-1.pdf` (Bill #4, Dec 2, 2025) 5. `DOCKET_SUMMARY.md` (Case docket through Doc 96) 6. `MOR_STATUS_MEMO.md` (MOR filing status verification)

## A. BILLING FOR WORK FILED MONTHS LATE OR IMMEDIATELY RETRACTED

### Finding #1, MORs Filed Months Late: Consistent Pattern of Untimely Filing

All MORs through June 2024 were eventually filed. The filing record:

| Date | Staff | Description | Hours | Amount | Docket | Filing Delay |
|------|-------|-------------|-------|--------|--------|--------------|
| 3/12/24 | RAB | "Drafted January and February 2024 MORs" | 1.0 | $350 | Doc 27-28 (04/04/24) | Jan: 3 mos; Feb: 2 mos |
| 4/4/24 | DS | "Redacted, filed, and emailed UST MOR's for Jan and Feb" | 0.3 | $37.50 | Doc 27-28 (04/04/24) | Filed same day |
| 4/17/24 | RAB | "Drafted March MOR for client approval" | 1.0 | $350 | Doc 38 (05/10/24) | ~6 weeks late |
| 5/23/24 | RAB | "Prepared April MOR" | 1.0 | $350 | Doc 45 (05/31/24) | ~1 month late |
| 5/30/24 | RAB | "e-mailed to follow up on status of April MOR" | 0.4 | $140 | Doc 45 (05/31/24) | Filed next day |
| 5/31/24 | AB | "Filed April MOR with redacted bank statements" | 0.3 | $52.50 | Doc 45 (05/31/24) | Same day |
| 6/11/24 | RAB | "e-mails with US Trustee's office regarding due date for May MOR" | 0.4 | $140 | Doc 58 (09/16/24) | May MOR filed 4 months late |
| 9/11/24 | RAB | "Reviewed bank statements for May-July; prepared May MOR and June 1-14 MOR" | 1.5 | $525 | Docs 58-59 (09/16/24) | May: 4 mos; Jun: 3 mos |

**Total MOR billing:** $1,945 across 5.9 hours **All MORs were eventually filed.** However, the pattern of delay is striking: - Jan-Feb MORs: batch-filed 2-3 months late (04/04/24) - Mar MOR: filed ~6 weeks late (05/10/24) - Apr MOR: filed ~1 month late (05/31/24) - **May-Jun MORs: batch-filed 3-4 months late (09/16/24)**, same day as the retracted motion for final decree (Finding #2)

The last MOR filing was September 16, 2024 (Docs 58-59). Post-confirmation MORs are not required in Subchapter V cases; the applicable reporting obligation is the annual report under the Confirmation Order.

**PDF location:** Bill #4, pages 4-6 (6/11/24 entry on page 6); Bill #3, pages 5-6.

### Finding #2, Motion to Administratively Close: Filed and Withdrawn Same Day ($175)

| Date | Staff | Description | Hours | Amount |
|------|-------|-------------|-------|--------|
| 9/11/24 | RAB | "Motion for final decree, Drafted motion in preparation for filing after May and June MORs are filed." | 0.5 | $175 |

The motion was filed as **Doc 60 (09/16/24)**, but Ryan **withdrew it the same day** as **Doc 61 (09/16/24)**. The motion existed on the docket for approximately zero hours before Ryan retracted it.

Doc 60 is titled **"MOTION TO ADMINISTRATIVELY CLOSE CHAPTER 11 CASE"** (not "Motion for Final Decree" as Ryan's billing entry described). The motion also contains two additional defects:

1. **Wrong debtor name:** Paragraph 1 reads "COMES NOW Damon K. Jones, the Debtor and Debtor-in-possession herein (the 'Debtor' or 'Jones')", Ryan recycled the template from the **Jones case (22-41154, W.D. Mo., Norton)** without changing the debtor's name to

Victory Cleaning Systems. This is the same case where Blay self-reduced his fee application from $29,544 to $6,605 (78%) after the Court set a hearing on the original amount (Docs. 55, 67, 72).

2. **False representations to the court:** Para 5 states "The Debtor continues to make payments due under his Plan", only one month's initial payments ($2,114.05 to CIT, Ally, and the IRS) had been made out of sixty required, with zero payments to unsecured creditors. Para 6 states "The Plan has been substantially consummated...the bankruptcy estate has been fully administered", after one month of a sixty-month plan.

On September 16, 2024, Ryan filed four documents in rapid succession: 1. Doc 58, May 2024 MOR (4 months late) 2. Doc 59, June 2024 MOR (3 months late) 3. **Doc 60, Motion to Administratively Close** (wrong debtor name, false statements) 4. **Doc 61, Withdrawal of Motion to Administratively Close**

This is arguably worse than never filing: Ryan billed $175 to draft a motion using another client's template without proofreading it, included false representations about plan performance, filed it, and immediately realized (or was told) the case was not ready, vehicles not titled, MORs months behind, Ally/CIT issues unresolved. He either: - Filed without checking whether the case was eligible or reading his own filing (incompetence), or - Knew the case wasn't ready but filed anyway, then withdrew (waste)

Either way, the estate paid $175 for a motion that contained the wrong debtor's name, false statements about plan consummation, produced zero benefit, and was retracted within hours.

**PDF location:** Bill #4, page 6. **Docket:** Doc 60 (filed 09/16/24), Doc 61 (withdrawn 09/16/24).

### Finding #3, September 2024: $700 in Billing, Late MORs + Retracted Motion

September 2024 is the last month of billing before the 11-month gap. The two entries:

| Entry | Amount | Result |
|---|---|---|
| MOR preparation (May + June) | $525 | Filed 09/16/24 (Docs 58-59), 3-4 months late |
| Motion for final decree | $175 | Filed AND withdrawn same day 09/16/24 (Docs 60-61) |
| Total | $700 | Two late MORs + retracted motion |

The MORs were real deliverables, albeit months late (May MOR filed 4 months after the reporting period; June MOR 3 months late). The motion for final decree was filed and retracted within hours, zero benefit to the estate. Net value of the $700: two tardy MORs (bank statements only, no financial reports) and a wasted motion. This is the last substantive billing before 11 months of silence.

## B. COMPETENCE FAILURES BILLED TO THE ESTATE

### Finding #4, Motion to Reopen a Case That Was Never Closed ($175)

| Date | Doc | Event |
|---|---|---|
| 10/29/2025 | Doc 63 | Motion to Reopen Ch 11 Case, filed by Ryan Blay |
| 10/29/2025 | Doc 64 | Application to Waive Filing Fee |
| 10/31/2025 | Doc 65 | Clerk Notice: **"Case is NOT closed."** Docs 63 and 64 stricken. |
| 11/3/2025 | Billing | RAB: "Drafted motion to reopen", 0.5 hrs, $175 |

Ryan filed a motion to reopen a case that was never closed. The Clerk struck the motion within two days. The debtor's own attorney did not know whether his case was open or closed.

The billing entry is dated **11/3/2025**, three days after the motion was stricken (10/31/2025). Either: - Ryan logged the time late (the work predated the billing entry), or - Ryan did additional work on a motion that was already dead

Either interpretation is problematic. Dan paid $175 for a filing that demonstrated his attorney's unfamiliarity with the case status.

**PDF location:** Bill #4, page 7.

### Finding #5, Plan Drafting: 9.0 Hours ($3,150) for a Defective Plan

| Date | Hours | Amount | Description |
|---|---|---|---|
| 4/1/24 | 1.5 | $525 | "Plan drafting" |
| 4/2/24 | 3.0 | $1,050 | "Continue drafting plan, liquidation analysis" |
| 4/2/24 | 0.5 | $175 | "Cashflow discussions for plan" |
| 4/3/24 | 4.0 | $1,400 | "Continued work on plan, e-mailed plan minus cash flow projections" |
| Total | 9.0 | $3,150 | |

Additional plan-related entries: - 4/4/24 DS: "Made formatting revisions to Plan, compiled and added Exhibits, filed, and served", 1.2 hrs, $150 - 4/11/24 RAB: "Filed cash flow statements and balance sheet for 1116 documents", 0.5 hrs, $175 - 4/24/24 AB: "Drafted Ballots and mailed them out with updated deadline", 1.0 hrs, $125 (ballots already drafted and served by DS 13 days earlier on 4/11/24)

**Grand total plan drafting/filing: 11.7 hours, $3,600** (including 4/24 ballots rework)

The product of this work, the confirmed Chapter 11 Plan, contained: 1. **$72,842 in phantom CIT vehicle debt** that corresponds to no filed claim and no plan class 2. **Class 2 monthly payment overstated by 3.2x** ($1,509 vs. correct $471.58) 3. **Ally Bank omitted entirely** from the plan (Ryan later called this "negligent", Doc 46) 4. **Vehicle descriptions wrong** (Chevy/GMC swapped between schedules and the plan) 5. **Exhibit E pro forma** built on the phantom debt, making financial projections meaningless

This is the single largest block of billing in the case. Every major component had an error.

The 4/3/24 entry alone, 4.0 hours, $1,400, is the largest individual time entry in the entire billing history. It is a single block entry ("Continued work on plan, e-mailed plan") with no task-level breakdown. The description reveals the plan was sent incomplete: "e-mailed plan **minus** cash flow projections." The Debtor received the most critical document in the case without its financial foundation.

**PDF location:** Bill #4, pages 4-5.

---

### Finding #6, Ally Work Billed but Claim Never Scheduled ($1,330)

| Date | Hours | Amount | Description |
|------|-------|--------|-------------|
| 5/31/24 | 0.5 | $175 | "Filed by Ally Bank on Isuzu. E-mailed client re same" |
| 6/3/24 | 0.6 | $210 | "Reviewed motion and e-mailed Evan Moscov" |
| 6/4/24 | 0.8 | $280 | "Drafted proposed resolution to MFRS" |
| 6/4/24 | 0.5 | $175 | "call re status of plan confirmation tomorrow" |
| 6/4/24 | 0.6 | $210 | "Discussing status of Ally agreement to resolve MFRS" |
| 6/5/24 | 0.8 | $280 | "Hearing on confirmation, Plan to be confirmed as amended" |
| **Total** | **3.8** | **$1,330** | |

Ryan billed 3.8 hours ($1,330) handling the Ally MFRS crisis in late May / early June 2024. The result was a side stipulation (Doc 46) requiring $529.89/month payments. But Ryan never: - Added Ally to the Plan as a scheduled claim - Created a plan class for Ally's $10,421.29 secured claim - Amended the Plan to reflect the Ally obligation

The stipulation was a patch. The underlying omission, which Ryan himself called "negligent", was never fixed. When Ally later filed a Notice of Default (Doc 62, 01/31/2025) based on $0 in payments, the root cause was the same negligent omission from June 2024.

**PDF location:** Bill #4, pages 5-6.

---

## C. ACCOUNT SUMMARY AND LEDGER ERRORS

### Finding #7, Account Summary Date: "1/31/23" (Case Didn't Exist)

Bill #4 Account Summary, page 1:

> "1/31/23, A fees of $2,275 & Expenses of $12.12 for January, $2,287.12"

The case was filed 01/05/2024. VCS did not exist as a bankruptcy case in 2023. The correct date is 1/31/24. This error appears on every copy of the Account Summary across Bills #2, #3, and #4, it was never caught or corrected.

**PDF location:** Bill #4, page 1.

### Finding #8, Refund Shortfall: $5.40 Unaccounted

| Item | Amount |
|------|--------|
| Total paid by Debtor (bank-verified) | **$19,738.00** |
| WM Law self-calculated billing total | $18,080.90 |
| Excess over self-calculated total | **$1,657.10** |
| Actual refund (12/19/2025) | $1,651.70 |
| **Refund shortfall (unaccounted)** | **$5.40** |

Bank records confirm 16 ACH payments totaling $8,000. Total paid = $11,738 retainer + $8,000 ACH = $19,738. WM Law's self-calculated billing total is $18,080.90 (not court-approved; the only court-approved amount is $14,442.90 per Doc 57). The excess over that self-calculated total: $19,738 - $18,080.90 = $1,657.10. WM Law refunded $1,651.70, leaving $5.40 unaccounted. See WM_LAW_ACH_PAYMENT_AUDIT.md for complete verification. Pilar Perez-Wagoner processed the refund.

This is minor in isolation but significant in context: WM Law's own refund calculation confirms they knew the Debtor paid $19,738 -- yet their billing ledger logged only 3 of 16 ACH payments. Even their corrective refund was $5.40 short, on top of the 13 missing ACH entries (of 16 bank-verified), the phantom $9 February charge, the February addition error, and the Bill #3 summary omission.

### Finding #9, 13 of 16 ACH Payments Missing During 11-Month Work Gap

This is documented elsewhere but its relationship to the billing timeline is significant:

- **Last substantive billing entry:** 9/11/2024 (MORs + final decree, filed 9/16/24; motion retracted same day)
- **Next billing entry:** 9/10/2025 (call to Ally Financial)
- **Gap:** 11 months, zero work performed
- **ACH payments during gap:** $5,000 in $500/month auto-debits (10 payments, Oct 2024 through Aug 2025; work resumed Sep 2025)
- **Payments logged on Bill #4 during this period:** 1 (9/2/24: -$500)
- **Payments not logged:** 13 of 16 total ACH payments across full representation, ~$6,500

WM Law's auto-debit continued pulling $500/month from the estate operating account during a period when zero work was performed. The billing ledger logged only 3 of 16 bank-verified ACH payments ever made.

Additionally, Bill #4's Account Summary records the first ACH payment date as "9/2/24," while the line item on page 6 records the same payment as "9/3/25", a discrepancy of one year and one day. WM Law's own billing records cannot agree on when a payment was received.

---

## D. PRE-FILING BILL ANOMALIES (Bill #1)

### Finding #10, "File Setup": 3.0 Hours ($1,050)

Bill #1, 11/28/2023:

> "Set up file. File set up. Engagement letter saved (under Bankruptcy engagement. $11738 to be paid (to trust) pre-filing", RAB, 3.0 hrs × $350 = $1,050

Three hours to set up a file and save an engagement letter. Industry standard for file setup in a consumer/small business bankruptcy practice is 0.2, 0.5 hours. Even bundling an initial consultation, 3.0 hours is at the extreme high end, and the description does not mention any substantive legal analysis, case evaluation, or strategic planning. It says "file set up" and "engagement letter saved."

At $350/hr, the estate paid $1,050 for this task. The fundamental question is whether 3.0 hours is defensible for the described work.

For context: Ryan billed 1.0 hour total for the March MOR (Finding #1) and 0.5 hours for the motion for final decree (Finding #2). File setup allegedly took 3x as long as preparing a monthly operating report and 6x as long as drafting a motion.

**PDF location:** Bill #1, page 2.

### Finding #11, Footer States "Retainer Fee of $0.00"

Bill #1, page 2, boilerplate Hourly-Billing Terms & Notes:

> "You have paid an initial retainer fee of **$0.00** to be applied to hourly time spent on your case."

Same bill, Account Summary, page 1:

> "12/22/23, Payment into Trust Account, Retainer, Check 122, **-$11,738**"

The retainer was $11,738. The contractual boilerplate, the section that constitutes the billing terms of the engagement, states $0.00. The template field was never updated. This is the first bill the client received.

**PDF location:** Bill #1, pages 1-2.

### Finding #12, Pre-Filing Fees: $1,890 Deducted from Trust, Court Approval Status Unknown

Bill #1 Account Summary:

| Date | Description | Amount |
|---|---|---|
| 12/22/23 | Payment into Trust Account, Retainer | -$11,738 |
| Nov-Jan 5, 2024 | Pre-filing attorney fees | $1,890 |
| Jan 5, 2024 | Court Filing Fees | $1,738 |
| | **Current Balance** | **($8,110)** |

The $1,890 in pre-filing fees was deducted from the retainer before post-filing billing began. These entries (11/28/23, 12/22/23, 1/4/24, 1/5/24) are **not reproduced** in the "Outline of Work Performed" on Bills #2, #3, or #4, which all start at 1/11/2024.

**Question:** The $18,080.90 figure is WM Law's self-calculated billing total, NOT court-approved. The only court-approved WM Law compensation is $14,442.90 (Doc 57, 07/29/24). Did WM Law's self-calculated total include the $1,890 in pre-filing work? If pre-filing fees were deducted from the trust but not presented for court approval under 11 U.S.C. § 330, that is a separate disclosure issue.

This requires verification against the fee application filing.

**PDF location:** Bill #1, page 1.

### Finding #13, Bill Footer/Engagement Letter Discrepancy Present from Day One

Three different sources state three different rate schedules:

| Source | Attorney Rate | Paralegal Rate |
|---|---|---|
| Engagement letter (09/12/2023) | $350/hr | $150/hr |
| Bill #1 footer (01/10/2024) | $300/hr | $125/hr |
| Billing line items (all bills) | $350/hr | $175/hr |

Bill #1 footer (page 3): "*$300.00 per hour for all work performed on your case by an Attorney; and $125.00 per hour for all work performed on your case by Paralegals, Law-Clerks, and Legal Assistants.*"

Bill #1 line items: Every RAB entry billed at $350. DS entry (1/5/24) billed at $175.

The engagement letter (RyanBlayEngagementLetter.pdf, dated 09/12/2023) specifies $350/hr for attorneys and $150/hr for paralegals. The attorney billing rate of $350 therefore matches the engagement letter. There is no attorney rate overcharge.

However, two discrepancies remain:

1. **Bill footer is wrong.** The $300/$125 footer was a template artifact that was never updated to reflect Dan's engagement letter rate of $350/$150. This footer appeared on Bills #1 through #3 and was changed to $350/$175 on Bill #4. The footer did not control the actual billing, line items were billed at $350 from the first entry, but its presence on the first three bills creates a confusing paper trail.

2. **Paralegal secretarial work overcharge.** The engagement letter specifies $150/hr for paralegals but also states: "*There will be no charge for work done by paralegals that is in the nature of routine secretarial work.*" Five paralegal entries totaling 2.0 hours consist entirely of filing, serving, formatting, and mailing, routine secretarial work that should have been $0 per the engagement letter:

| # | Staff | Date | Rate | Hours | Billed | Description |
|---|---|---|---|---|---|---|
| 6 | DS | 1/5/24 | $175 | 0.8 | $140 | Filed Petition and Schedules; paid Filing Fee |
| 25 | DS | 2/7/24 | $175 | 0.4 | $70 | Formatted and filed Status Conference Report, served |
| 35 | DS | 2/21/24 | $175 | 0.2 | $35 | Filed Certificate of Service on Order |
| 49 | DS | 4/4/24 | $125 | 0.3 | $37.50 | Redacted, filed, emailed MORs |
| 67 | AB | 5/31/24 | $175 | 0.3 | $52.50 | Filed April MOR, emailed copies |
|  |  |  |  | 2.0 | $335 |  |

Total paralegal secretarial work overcharge: **$335** (5 entries, 2.0 hrs of filing/serving/formatting/mailing billed at $125, $175 that should have been $0 per the engagement letter's no-charge clause for routine secretarial work).

Note: The paralegal hours are already included in the Math Error Audit totals. This finding establishes that the bill footer was inaccurate from the inception of representation, and that routine secretarial work was billed to the estate in violation of the engagement letter's express no-charge provision from the first paralegal entry.

**PDF location:** Bill #1, pages 2-3; engagement letter dated 09/12/2023.

---

## E. PATTERN EVIDENCE

---

### Finding #14, Same-Day Paralegal Rate Inconsistency (2/21/2024)

On February 21, 2024, two DS fee entries appear:

| Entry | Stated Rate | Hours | Billed | Effective Rate |
|---|---|---|---|---|
| DS App to Employ | $125 | 0.4 | $70 | $175 |
| DS COS | $175 | 0.2 | $35 | $175 |

The same paralegal, on the same day, is shown at two different stated rates, but both entries calculate at $175. The App to Employ entry states $125 but bills at $175 (Math Error Audit, Error #1). The COS entry openly states $175.

This means the billing system did not have a consistent rate for the paralegal. On the same day, in the same bill, the rate field shows two different values. Both calculate to $175, which exceeds the engagement letter rate of $150/hr for paralegals.

**PDF location:** Bill #4, page 4.

### Finding #15, Paralegal Rate Partially Corrected Mid-Case

The paralegal rate pattern shows a shift during the case:

**January, February 2024 (all at $175):** - 1/5/24 DS: $175 - 1/11/24 DS: $175 - 2/7/24 DS: $175 - 2/21/24 DS: stated $125, calculated at $175 - 2/21/24 DS: $175

**April, May 2024 (mixed):** - 4/4/24 DS: **$125** (correct) - 4/4/24 DS: **$125** (correct) - 4/11/24 DS: **$125** (correct, though hours/amount don't reconcile, Error #2) - 4/24/24 AB: **$125** (correct) - 5/31/24 AB: **$175** (reverted to overcharge)

Someone partially corrected the paralegal rate in April 2024, three months into the case. But the correction was inconsistent: the AB entry on 5/31/24 reverted to $175. And the January-February overcharges were never retroactively corrected.

Bill #4 (12/2/2025) retroactively changed the footer to $350/$175, matching the billing entries but exceeding the engagement letter's $150 paralegal rate. The footer went from understating the attorney rate ($300 vs $350 engagement) to overstating the paralegal rate ($175 vs $150 engagement). At no point did any bill footer match the engagement letter.

### Finding #17, Systematic "Drop Last Month" Template Defect (Cross-Bill)

Cross-bill validation revealed that the billing template systematically drops the most recent month from summary calculations:

| Bill | Column(s) Affected | Month Dropped | Amount |
|---|---|---|---|
| Bill #2 | TOTAL BALANCE Totals | February | $2,703.18 |
| Bill #2 | Current Balance | February | $2,703.18 |
| Bill #3 | Attorney Fees Totals | May | $1,557.50 |
| Bill #3 | TOTAL BALANCE Totals | May | $1,557.50 |

Bill #2's Current Balance of ($5,822.88) contradicts the Trust Balance Totals of $3,119.70 **on the same page**. Both purport to show remaining trust. They differ by $2,703.18, exactly February's charges.

Bill #4 uses a list format without a Totals row, so the defect cannot manifest there. But every summary table WM Law produced contains at least one column where the most recent month was dropped from the total.

See Math Error Audit, Errors #12, #14 for full documentation.

**PDF location:** Bill #2, page 2; Bill #3, page 2.

### Finding #16, The 11-Month Gap in Context

The billing timeline viewed as a whole:

| Period | Months | Billing | Work Product Filed |
|---|---|---|---|
| Nov 2023, Jan 5, 2024 | ~2 | $1,890 | Petition (Doc 1) |
| Jan 11, Jun 2024 | ~6 | $15,977 | Plan, confirmation, MORs (Jan-Apr filed), various motions |
| Jul 2024 | 1 | $350 | None, "Updates from Mr. Brown" |
| Sep 2024 | 1 | $700 | Two late MORs (Docs 58-59) + retracted motion (Docs 60-61) |
| Oct 2024, Aug 2025 | **11** | **$0** | **Nothing**, while ACH auto-debits continued |
| Sep 2025 | 1 | $315 | None, phone calls |
| Nov 2025 | 1 | $700 | Motion to reopen (stricken), meeting with client |

The case effectively went dormant after September 2024. The September billing produced zero deliverables. The next filing of any kind was the stricken motion to reopen in October 2025, 13 months later. During this dormancy: - Year 1 annual report 7.5+ months overdue (MORs not required post-confirmation in Sub V) - No plan payments distributed to creditors ($0 distributed, total) - No vehicle lien work performed - No Ally cure addressed - $500/month continued auto-debiting from the estate

---

## F. CONSOLIDATED FINDINGS TABLE

| # | Category | Description | Amount | Impact |
|---|---|---|---|---|
| 1 | Late Filing | MORs filed months late (Jan-Jun 2024 batch-filed 1-4 months behind) | $1,945 | Pattern of untimely filing during pre-confirmation period |
| 2 | Wasted Work | Motion for final decree filed and withdrawn same day (Docs 60-61) | $175 | Billed for motion retracted within hours |

| # | Category | Description | Amount | Impact |
|---|----------|-------------|--------|--------|
| 3 | ~~Resolved~~ | April MOR verified filed as Doc 45 (05/31/24) | ~~$52.50~~ | **CONFIRMED filed**, AB billing entry was accurate |
| 4 | Competence | Motion to reopen case that was never closed | $175 | Attorney didn't know case status |
| 5 | Competence | Plan drafting, 11.7 hrs for plan with 5 major errors | $3,600 | Defective work product |
| 6 | Competence | Ally MFRS response, billed but claim never scheduled | $1,330 | Band-aid; underlying problem unfixed |
| 7 | Ledger Error | Account Summary date "1/31/23", case didn't exist | , | Carelessness |
| 8 | Ledger Error | Refund shortfall ($5.40, self-calculated total vs bank-verified) | $5.40 short | Can't track own collections |
| 9 | Ledger Error | 13/16 ACH payments unlogged during work gap | ~$6,500 | Inflated balance by $6,500 |
| 10 | Pre-Filing | "File setup", 3.0 hours for saving an engagement letter | $1,050 | Plausibility question |
| 11 | Pre-Filing | Footer says retainer = $0.00 (actual: $11,738) | , | Template not updated |
| 12 | Pre-Filing | $1,890 pre-filing fees, court approval unknown | $1,890 | Possible § 330 issue |
| 13 | Pre-Filing | Bill footer/engagement letter discrepancy from first entry | $335 | Template anomaly; $335 paralegal secretarial work overcharge (5 entries, 2.0 hrs billed for filing/serving/formatting/mailing that engagement letter says "no charge") |
| 14 | Pattern | Same-day paralegal rate split (2/21/24) | , | Internal inconsistency |
| 15 | Pattern | Paralegal rate partially corrected mid-case, then reverted | , | Knew about error, didn't fix |
| 16 | Pattern | 11-month work gap with continued ACH auto-debits | $5,000 | Auto-billing for zero work (10 payments, Oct 2024-Aug 2025) |
| 17 | Pattern | Systematic "drop last month" template defect (Bill #2 + #3) | , | Every summary table has at least one wrong total |

This audit was prepared by the Debtor from source billing documents (Bills #1-4), the case docket (through Doc 96), and bank statements. All findings have been verified against original PDF documents. Prepared February 14, 2026; updated April 7, 2026. Corrections noted inline.