

# EXHIBIT SS

Wagoner Email (01/29/26) - "no wrongdoing or malfeasance"

 

**Re: Oustanding factual clarifications**

From Jeffrey Wagoner <jeffwagoner@wagonergroup.com>

Date Thu 2026-01-29 2:14 PM

To Ryan Blay <blay@wagonergroup.com>

Cc Dan Brown ███████████████ ; Pilar Perez <pilarperez@wagonergroup.com>

Dan -

There has been no wrongdoing or malfeasance by WM Law.  Refunding any fees is inappropriate and out of the question.  I waived $1,715 in fees back in December as a gesture of goodwill, and apparently that has given you the wrong idea that your case hasn't been handled correctly or that you somehow have leverage to negotiate your way into a refund.

This firm is dedicated to serving clients with whom we can have a good working relationship to make their lives better and get them back on a good financial path.  Having been dragged into this case now, it is clear to me that we can no longer effectively serve your company.  You need a new representative in your case because you clearly have no faith in Ryan, our lead business bankruptcy attorney.  That is why I directed Ryan to file a motion to withdraw.  It is better for both your company and our law firm to end the attorney-client relationship.  As a business owner yourself, I suspect you have ran across similar situations.  It is counter-productive to continue a caustic relationship.

Your new attorney can pick up where we left off.  The case was confirmed, and now your company needs to finish its obligations under the plan.  The hard part of legal work has been completed.  Complete the plan requirements and have your new attorney file the appropriate documents to wrap up the case.  There are a number of good local Ch 11 attorneys that you can hire to complete this case.  We will cooperate fully with your new attorney to bring them up to speed on the case and ensure a complete handoff of your file.

Best regards,
Jeff

Jeffrey L. Wagoner,
President and Attorney at Law
WM LAW
15095 W. 116th St.
Olathe, KS 66062

Case 24-40010-can11   Doc 97-49   Filed 04/08/26   Entered 04/08/26 15:40:42   Desc
Exhibit SS   Page 2 of 10

Phone (913) 422-0909

Fax (913) 428-8549

Email: jeffwagoner@wagonergroup.com

www.KansasCityEstateplanner.com

www.KansasCityBankruptcy.com

**1-855-Don't-Worry**

Confidentiality Statement & Notice: The information contained in this E-mail is privileged, confidential information of the sender. Any review, retransmission, dissemination or other use of this information by any person other than the intended recipient is strictly prohibited. If you think you have received this message in error, please reply to this message indicating it was received in error and then delete it from your files. Communication by E-mail is not necessarily secure and may be intercepted during transmission. Please exercise caution when including information in E-mail communications. Any reliance on the information contained in this message by someone who has not entered into a written fee agreement with the above attorney and/or law firm is taken at the reader's own risk. Receipt of this communication does not, by itself, create any lawyer/client relationship with the addressee. The legal staff of this firm are licensed to practice ONLY in Kansas and Missouri. We do not intend to offer any advice to any person or entity regarding any legal matter not involving Kansas or Missouri law.

Note: The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; (3) persons not participating in our communication may intercept our communications by improperly gaining access to your computer or my computer or even some computer unconnected to either of us which the e-mail passed through. If you want future communications to be sent in a different fashion, please let me know at once.

On Thu, Jan 29, 2026 at 1:33 PM Ryan Blay <blay@wagonergroup.com> wrote:

I will let Jeff respond in kind, but I need to know if this is a serious proposal.

You hired us to file a Subchapter V case which was confirmed. As part of that process, the court approved fees for the time spent, including pre-petition and post-petition work. As part of the plan, you agreed that in lieu of paying our remaining fees immediately, you would pay monthly, which was memorialized by you voluntarily agreeing to the ACH payments. The fact that that plan doesn't say "payment via ACH" is irrelevant. I pointed out the section of the plan that requires payment of administrative fees by the effective date, unless otherwise agreed to. You have not addressed that at all in your proposal.

We will document our attempts to work with you, CIT, and other parties to obtain titling of the vehicles prior to the filing of the motion. I'm sure the court will want some further background of when these titles issues arose, what efforts you and we took to resolve those (including demands made on CIT) and other issues.

What is confusing me, outside of your demand for return of the earned fees that were used to give your company a benefit, is why you would refuse to allow us to withdraw if you have concerns or grievances with the manner in which we've pursued the case. If you want someone else to come to assist with Ally or any other issues in your case, you will need them to enter an appearance and allow us to withdraw.

Refusing to consent to withdrawal and simultaneously demanding a refund of everything we've earned throughout the case makes no sense to me. You've made it abundantly clear from your e-mails that the attorney-client relationship is irretrievably broken.

The hearing on the motion to withdraw has been set for the same 11 AM zoom audio conference as the CIT hearing, so I anticipate you'll be attending.

Ryan

On Wed, Jan 28, 2026 at 7:27 PM Dan Brown ███████████ wrote:
Jeff,

Following your response and the firm's stated intent to withdraw, I am prepared to propose a clean resolution that unwinds the engagement and addresses the remaining issues without further dispute.

As reflected in the record and confirmed in your recent email, authority for the post-confirmation ACH payment mechanism was not established by reference to a specific plan provision or court order. In addition, material issues affecting operations, including the vehicle lien and title matters, remained unresolved for an extended period. Given that context and the firm's decision to disengage, I believe correction and mitigation are appropriate.

Based on the firm's accounting as you have confirmed, I propose the following resolution:

1. Fee separation: return of the total amount paid by Victory Cleaning Systems, Inc. to WM Law to date in connection with this case, $18,080.90, representing all court-approved fees and expenses inclusive of the retainer.
2. Mitigation: reimbursement of documented interim operating costs incurred to keep the business operating while the lien and title issues remained unresolved, totaling approximately $6,100.
3. Orderly withdrawal: upon completion of the above and an orderly transition, including file delivery and coordination with substitute counsel, I will consent to withdrawal.

This proposal is intended to unwind the engagement and close the matter cleanly. It is not an allegation of misconduct and avoids further process for either side.

Please let me know whether the firm is willing to resolve this on that basis. If so, I am happy to memorialize the terms and coordinate next steps.

Dan

Case 24-40010-can11   Doc 97-49   Filed 04/08/26   Entered 04/08/26 15:40:42   Desc
Exhibit SS   Page 5 of 10

On Jan 28, 2026, at 11:21 AM, jeffwagoner@wagonergroup.com wrote:

Dan:

I did receive your inquiry last week.  It is clearly an AI-generated inquiry.  AI works well for generating multiple questions in a matter of seconds.  Unfortunately, answering these AI-generated questions in detail requires a significant amount of time.  I am not your attorney, so I must dig through many documents in your case to get your answers.  I will not be responding to future emails of this nature – it simply takes an inordinate amount of time to answer AI-generated lists of questions.

Ryan has been your attorney here at WM Law, not me.  Therefore, specific questions about the conduct of your case need to be directed to him.  You state that you have been unable to get your company's vehicles titled for 760 days, but you did not draw this problem to Ryan's attention until a few months ago.  So Ryan has not failed to act for 760 days.  Additionally, he attempted to resolve the issue by working with the creditor before filing a motion, which is the preferred course of action.

I told you on December 2, 2025, that I was not going to assign another attorney to your case after you requested that.  I also stated that if you and Ryan cannot work effectively together, then you need to find other counsel.  When I received your email with these same questions (below) on January 19th, it was clear to me that you continue to be dissatisfied with Ryan's work.  Therefore, I instructed Ryan to file a motion to withdraw in your case.  Since your case was confirmed over 19 months ago, and the case is in the "quiet time" for Victory Cleaning to execute the plan, now is a good time for you to find other counsel.  Ryan intends to file the motion to withdraw this week.  The court will want other counsel to enter an appearance before granting that motion, so you need to find replacement counsel right away.  If you refuse to find alternative counsel, then we will ask the court to take the unusual action of allowing us to withdraw without new counsel because the attorney-client relationship is clearly dysfunctional.  Again, I stated nearly 2 months ago that you should consider finding new counsel, so this is not a surprise development.

Here are my answers to your questions below based on the information I have readily available:

1. Whether Ryan Blay had served as lead counsel in any **Chapter 11 Subchapter V** business case prior to this matter.

   Ryan had served as lead counsel on at least 5 and possibly as many as 10 Chapter 11, Subchapter V cases prior to your case.  Subchapter V of Chapter 11 is the newest type of bankruptcy, having only been established on February 19, 2020, just at the start of the Pandemic.  Consequently, few Subchapter V cases have been filed nationwide in comparison to other types of bankruptcies.  Ryan has been at the forefront of developing Subchapter V procedures in the District of Kansas and the Western District of Missouri, having just finished a term on the Bench-Bar Committee for the Bankruptcy Court for the District of Kansas and also serving as the President of the Kansas City Bankruptcy Bar Association.  The insinuation of this question is that Ryan is inexperienced in Subchapter V cases. Ryan has as much experience or more in Subchapter V cases as any attorney in the District of Kansas and the Western District of Missouri.

2. Whether any attorney at the **Olathe office** had served as lead counsel in a Chapter 11 Subchapter V business case prior to this matter.

   No.  Ryan is the lead attorney for our Chapter 11 and Chapter 12 practice.  Other attorneys routinely assist Ryan, but he is the head of our department.

3. Who, if anyone, provided **secondary attorney or paralegal review** of filings and plan mechanics during **2025 and 2026**.

   This information has been provided to you previously in the form of your billing file.  Doug Sisson and Ana (Ballesteros) Van Noy, both paralegals, assisted Ryan with work on your case.

4. What month and year Ryan Blay was designated a **Senior Partner** at WM Law.

   April 15, 2025

5. Please identify the **specific plan provision or court order** relied upon to authorize the post-confirmation **ACH payment stream of $500 per month for 24 months ($12,000.00)**.

   The court awarded our fee application on July 29, 2024.  This created an outstanding balance on your account of $6,342.90.  The chart contained in Section 2.1.A of your approved plan (filed 4/4/24, confirmed 6/14/24) provides for payments to WM Law of $500 per month on our approved fees.  This was approved for a total of $12,000 in payments, although the balance of our approved fees after application of amounts held in trust ended up less than $12,000.  At the time of submission of your plan on 4/4/24, the exact amount of fees that would be approved was unknown and had to be estimated, hence the difference.

6. What is the **total amount paid** by Victory Cleaning Systems, Inc. to WM Law to date in connection with this case, including the retainer, court-approved fees, and any post-confirmation payments.

I have previously provided to you detailed records of the fees, approvals and payments in your case. The total amount of expenses and fees pre-petition fees and post-petition fees approved was $18,080.90. The court filing fee alone was $1,738 of that balance, and $190.90 was billed in all other expenses. $16,152 was billed for attorney and paralegal hourly fees. Since August 2024 and through November 30, 2025, Ryan has billed $1,715 ($700 in September 2024, $315 in September 2025 and $700 in November 30, 2025). I agreed to waive those fees back in December. Consequently, they were never submitted for court approval.

Amounts that you deposited into our trust account ($11,738) were applied to the case expenses and court approved attorney fees. After applying the funds from the trust account, a balance of $6,342.90 remained as of August 9, 2024. Victory Cleaning made 16 ACH payments of $500 each on that balance, creating an overpayment of $1,651.70 on the court-approved fees. After discovering that our accounts receivable department had logged only 3 of those payments to your account, I notified you of our mistake and the overpayment on December 12, 2025. That overpayment was refunded to you by me via a check on December 19, 2025, which you picked up in person on that same date.

Ryan billed $525 in fees on December 17, 2025 for drafting the motion regarding the vehicle liens. Ryan has not filed another fee application for those $525 in fees.

Best regards,

Jeff

Jeffrey L. Wagoner

President & Attorney at Law

WM LAW,

15095 W. 116th St.
Olathe, KS 66062

Phone (913) 422-0909 / Fax (913) 428-8549

Email: jeffwagoner@wagonergroup.com

www.KansasCityEstateplanner.com

www.KansasCityBankruptcy.com

*1-855-Don't-Worry!*

<image001.png>

---

**From:** Dan Brown ⬛⬛⬛⬛⬛⬛⬛⬛
**Sent:** Wednesday, January 28, 2026 6:35 AM
**To:** Jeffrey Wagoner <jeffwagoner@wagonergroup.com>
**Cc:** Ryan Blay <blay@wagonergroup.com>; Pilar Perez (Wagoner) <pilarperez@wagonergroup.com>
**Subject:** Oustanding factual clarifications

Jeff,

As of today, it has been approximately **760 days** that Victory Cleaning Systems has been unable to legally register **four** company vehicles, and **10 days** have passed since my last email requesting your response.

I have not received a reply to the factual questions outlined below.

To be clear, I am not seeking discussion, characterization, or reassurance. I am requesting straightforward confirmations on discrete points that are fixed by the record, the confirmed plan, and the firm's own billing and payment activity.

Accordingly, I need direct answers to the following, **without reframing**:

1. Whether Ryan Blay had served as lead counsel in any **Chapter 11 Subchapter V** business case prior to this matter.

2. Whether any attorney at the **Olathe office** had served as lead counsel in a Chapter 11 Subchapter V business case prior to this matter.

3. Who, if anyone, provided **secondary attorney or paralegal review** of filings and plan mechanics during **2025 and 2026**.

4. What month and year Ryan Blay was designated a **Senior Partner** at WM Law.

5. Please identify the **specific plan provision or court order** relied upon to authorize the post-confirmation **ACH payment stream of $500 per month for 24 months ($12,000.00)**.

6. What is the **total amount paid** by Victory Cleaning Systems, Inc. to WM Law to date in connection with this case, including the retainer, court-approved fees, and any post-confirmation payments.

These are not hypothetical questions and they are not adversarial. They go directly to experience, oversight, plan compliance, and fee authorization. If the firm believes any of these questions cannot be answered as asked, please state that explicitly.

Absent clear responses, I will proceed on the understanding that the facts are as reflected in the plan language and the record and will plan next steps accordingly.

Sincerely,

Dan Brown
President, Victory Cleaning Systems Inc.

 | www.vcleaning.com |

--
Ryan A. Blay,

Senior Partner
WM LAW
15095 W. 116th St.
Olathe, KS 66062
Phone (913) 422-0909 / Fax (913) 428-8549
Email: blay@wagonergroup.com
www.KansasCityBankruptcy.com